IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **VIVIAN HANDY,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| | )   **CASE NO. 2:20-cv-00017-WC** |
| v. | ) |
| | )   **JURY TRIAL REQUESTED** |
| **ALABAMA DEPARTMENT** | ) |
| **OF LABOR,** | ) |
| | ) |
|    **Defendant.** | ) |

## AMENDED COMPLAINT

**COMES NOW** the Plaintiff, Vivian Handy, by and through her undersigned counsel of record, and hereby doth complain and aver against the above-named Defendant, as set forth herein-below.

### I. JURISDICTION & VENUE

1. Plaintiff Handy files this Complaint, institutes these proceedings, and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. §§ 1331 and 1334 (a)(4), as an action arising under the Act of Congress known as Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act, to obtain equitable and injunctive relief, the costs of suit, including reasonable attorneys' fees, and damages suffered by the Plaintiff, due to the Defendant's discrimination against Plaintiff.

2. Plaintiff Handy filed a charge of race discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") in Birmingham, Alabama on August 27, 2019. Plaintiff received a right-to-sue on October 21, 2019, giving her the right to pursue this claim in federal court for 90 days after said receipt. (Doc 1-1). As to claims

1

further articulated in an Amended and Supplemental charge filed on September 12, 2019, Plaintiff Handy anticipates a right to sue forthcoming that will be amended in. However, the allegations of the second charge are simply an outgrowth and expansion of the first charge and are thus appropriate for inclusion in this initial complaint.

3. Venue is proper in the Northern Division of the Middle District of Alabama, since the alleged discriminating action of Defendant occurred in Montgomery County, Alabama.

## II. PARTIES

4. The named Plaintiff, Vivian Handy (hereinafter "Plaintiff" or "Ms. Handy"), is a citizen of the United States and a resident of Montgomery County, Alabama. Plaintiff is over the age of nineteen years.

5. The named Defendant, Alabama Department of Labor (hereinafter "Defendant" or ("ADOL"), is an agency of the State of Alabama and an employer within the meaning of Title VII.  ADOL is located in Montgomery County, Alabama.  Ms. Handy was an employee of ADOL from October 2005 to on or about December 31, 2019.

## III. STATEMENT OF FACTS

6. Ms. Handy is an African American female.

7. Ms. Handy is a 1985 graduate of Alabama State University with a B.S. degree in Marketing, and a 1989 graduate of Troy University with a M.S. degree in Personnel Management.  From that point on Ms. Handy had a progression of jobs in state government, all of which were in the Human Resources departments of various state agencies.

8. In October 2005, Ms. Handy began working for the ADOL as a Departmental Personnel Manager with the additional duty of Human Resources Director. Ms. Handy avers that she was hardworking, dedicated, and very conscientious as an employee of ADOL. During her employment at ADOL she had an exemplary record, with no disciplinary write-ups and excellent evaluations.

**A. Ms. Handy's Race & Race-Based Hostile Work Environment Claims**

9. ADOL policy defines harassment as follows:

"The definition of harassment includes any form of bullying, intimidation or retaliation. Bullying is defined as a form of aggressive behavior manifested by the use of force or coercion to affect others, particularly when the behavior is habitual and involves an imbalance of power. Intimidation is defined as an action designed to force another into or deter another from some action by inducing fear, fright or purposeful embarrassment, especially if done to get what the intimidator desires. Harassment can include verbal harassment, physical assault or coercion and may be directed repeatedly towards particular individuals, perhaps on grounds of race, religion, gender, sexuality, or ability. The "imbalance of power" may be social and/or physical power."

10. On or about January 16, 2016, Ms. Handy was moved to the position of Labor Administrator, a position just under ADOL's Secretary of Labor, namely Fitzgerald Washington. Ms. Renee Minor, a white female, was selected to fill the Human Resources Director position vacated by Ms. Handy. At first, Plaintiff and Ms. Minor got along quite well. However, in time, Ms. Minor began viewing Ms. Handy as competition, and began subjecting her to discrimination and harassment on the basis of her African-American race.

11. Ms. Minor viewed Ms. Handy as a rival and acted like she could perform Ms. Handy's current job better than Ms. Handy. Ms. Minor also said Plaintiff Handy needed to engage in training her (Handy's) staff differently from what Handy believed

3

was in her staff's best interest.  Ms. Minor was not critical of other Caucasian counterparts or subordinates and Ms. Handy avers that Ms. Minor targeted her because of her African-American race.

12. Ms. Minor also took a superior attitude towards Ms. Handy in the development of the ADOL's Orientation/Onboarding Program, which was unnecessary and unwarranted especially since Ms. Handy was higher ranked.  Ms. Minor did not display a similar attitude towards her Caucasian counterparts or subordinates.  Ms. Handy wanted the program developed as an online program, making it more readily available, and saving ADOL money by doing so.  ADOL's Finance Director agreed that Ms. Handy's online program was a "no-brainer", as opposed to bringing people in and having them travel distances, which was the way Ms. Minor would have it done.

13. Ms. Minor regularly ignored Ms. Handy's requests for work-related information, including employee record-keeping.  On multiple occasions, Ms. Minor pushed aside Ms. Handy's requests, saying she would "get back" with Ms. Handy, but Ms. Minor never did and she continued to ignore Ms. Handy's requests. However, Caucasian employees' requests for work-related information were not ignored by Ms. Minor, and were responded to in a timely manner.

14. On or about mid-May 2019, Ms. Minor removed Ms. Handy's name from the distribution list of jobs provided weekly from the State Personnel Department, even though Ms. Minor did not supervise Ms. Handy or possess the authority to have Ms. Handy's name removed from a distribution list.  When Ms. Minor attempted to provide an excuse, Ms. Handy noted, without telling Ms. Minor the same, that a white male's

(Gregg Morrison's) name had not been removed, making Ms. Handy wonder why she, an African-American, was being singled out, in such a racial contrast.

15. On or about June 10, 2019, Secretary Washington began to scrutinize Ms. Handy's travel to conferences and placed a freeze on Ms. Handy's work travel. No other employee's travel, including that of many Caucasian employees, was so frozen.

16. On or about June 24, 2019, Ms. Minor wrongfully questioned Ms. Handy's authority and judgment in making a decision to provide the simulated registers to the E.S. Director, Mr. Robert Brantley. Ms. Minor was angered and infuriated by Ms. Handy's decision, even though Ms. Handy was trying to do good for the agency and was within her rights. Ms. Handy was unfairly scolded for what she was doing correctly. Ms. Minor's anger and scolding of Ms. Handy was fueled by a racial animus against Ms. Handy, because Ms. Minor never subjected Caucasian employees in the same way to such anger, scolding, and racial animus.

17. Ms. Minor's superior attitude towards Ms. Handy, was unnecessary and unwarranted, especially since Ms. Handy was higher ranked. Said attitude of Ms. Minor and her condescending treatment of Plaintiff Handy, were the result of a racial bias, harassment, and discrimination by Ms. Minor towards Ms. Handy.

18. Ms. Handy avers that Ms. Minor, several months after her initial appointment as H.R. Director, began treating Ms. Handy in such a harsh, belittling and condescending manner that it resembled the not-too-subtle way white administrators have sometimes talked down to their black subordinates. Although Ms. Minor was not Ms. Handy's supervisor, she continually made suggestions about how Ms. Handy should conduct her staff and work projects. Before Ms. Minor's employment with ADOL,

5

Secretary Washington never spoke with Ms. Handy about the projects she or her staff worked on, although Ms. Handy would provide him updates.  However, once said racially-inspired treatment was set forth in motion by Ms. Minor, it snowballed or dominoed and influenced Secretary Washington into believing that Plaintiff was no longer needed and expendable.

19. Ms. Handy avers that Secretary Washington knowingly acquiesced in Ms. Minor's racially discriminatory conduct, and could have stopped such offensive conduct but did not, and accordingly adopted and ratified said racially discriminatory conduct of Ms. Minor, thus making it also the policy of Defendant ADOL.  Accordingly, it was painfully clear to Ms. Handy that Secretary Washington had given Ms. Minor excessive authority and leeway to run roughshod over Ms. Handy, and subject her to painful racial harassment and discrimination.

20. The sum total of Ms. Minor's conduct, ongoing at least since December 2018, but revving up in the ensuing months up to Ms. Handy's August 14, 2019 receipt of Secretary Washington's July 31, 2019 letter, culminated in the notice that Ms. Handy's position would no longer be utilized, after December 31, 2019.  In effect, this sugar-coated and/or obscured the endemic racial discrimination resulting in the Ms. Handy's termination, effective December 31, 2019.

21. As a result ADOL and Secretary Washington attempted to paint Ms. Handy in a bad light, to justify the forthcoming involuntary end of her employment.  In October 2019 Secretary Washington unfairly blamed Ms. Handy for not planning the year 2019's employee appreciation event.  In reality, it was Secretary Washington's

responsibility to schedule and plan such an event, but he did not, and he unfairly passed the blame onto Ms. Handy.

22. Further, Ms. Handy's arrivals and departures from the office were monitored by Tonya Scott, Handy's inferior, and were either authorized or approved by Secretary Washington. No Caucasian employees were monitored in the same manner. Although Secretary Washington focused on Ms. Handy's attendance, he often ignored the fact that Ms. Minor, a Caucasian, failed to update the Director's calendar when she, Ms. Minor, was away on personal time.

23. Based on the foregoing, Ms. Handy avers that she was subjected to illegal race discrimination, a race-based hostile work environment, and terminated because of her African-American race in violation of Title VII, 42 U.S.C. § 2000(e). As a result of the illegal discrimination practiced against her, Ms. Handy has incurred damages and suffered mental and emotional anguish.

### B. Facts Related to Ms. Handy's Retaliation Claim

24. On or about January 28, 2019, ADOL announced that was appointing Gage Pregno, a white male, to Manager/Director of Governmental Affairs, a high-level merit system job to which he was not qualified pursuant to ADOL standards.

25. Several employees complained about the appointment and questioned how Mr. Pregno was qualified to be a director at ADOL. Therefore, on or about January 29, 2019, Ms. Handy reported to Tonya Scott, ADOL EEO manager, that Mr. Pregno's appointment might be an illegal political appointment, influenced by race, and asked Ms. Scott to investigate the same.

26. In reporting this to Ms. Scott, Ms. Handy engaged in a statutorily protected activity. As EEO manager, Ms. Scott has a duty to investigate allegations of racial discrimination and to report those findings to ADOL officials, including Secretary Washington. However, Ms. Scott never followed back up with Ms. Handy regarding her complaint.

27. Further, after Ms. Handy's report, ADOL began a pattern and practice of retaliation against Ms. Handy that ultimately resulted in her termination.

28. Additionally, after Ms. Handy's report, Secretary Washington instructed Ms. Scott to monitor Ms. Handy's arrivals and departures from the office, even though there had been no prior issue with Ms. Handy's arrivals and/or departures from the office.

29. Secretary Washington also began critiquing Ms. Handy's work and suggesting that she ensure that her staff was working on projects that supported the agency. Prior to her complaint, Secretary Washington never spoke with Ms. Handy about the projects her or her staff worked on, although she would provide updates to him. Ms. Handy had always been responsible for developing and implementing programs, policies, and projects for ADOL. Prior to her complaint, Ms. Handy was allowed to exercise independent judgment and had considerable latitude over the work she performed. Secretary Washington rarely questioned Ms. Handy's abilities and leadership until after her complaint.

30. On or about May 1, 2019, and after Ms. Handy's report, Secretary Washington moved Ms. Scott from Ms. Handy's supervision without any prior notification or explanation. Secretary Washington stated that Ms. Scott was moved for

"efficiency." However, Secretary Washington had never spoken about any efficiency issues prior to Ms. Scott's removal.

31. On or about mid-May 2019, Ms. Handy's name was removed from the distribution list of jobs provided weekly from the State Personnel Department.

32. On or about June 10, 2019, Secretary Washington began to scrutinize Ms. Handy's travel to conferences and placed a freeze on Ms. Handy's work travel. No other employees' travel was frozen.

33. In August 2019, Secretary Washington denied Ms. Handy's access to reports that were necessary for the performance of her job.

34. On August 14, 2019, Secretary Washington gave Ms. Handy a letter, dated July 31, 2019, stating that Ms. Handy's Labor Administrator position was due to be closed, effective December 31, 2019. As a result, Ms. Handy was terminated from her employment on December 31, 2019.

35. Based on the foregoing, ADOL engaged in a pattern and practice of retaliatory behavior that culminated in her termination. Ms. Handy avers that her termination was in retaliation for reporting a potential illegal political appointment influenced by race, namely the appointment of Mr. Gage Pregno, a white male, in violation of Title VII, 42 U.S.C. § 2000(e). As a result of the illegal retaliation practiced against her, Ms. Handy has incurred damages and suffered mental and emotional anguish.

## IV.  PLAINTIFF'S CAUSES OF ACTION

## COUNT ONE - RACE DISCRIMINATION PURSUANT TO 42 U.S.C. §2000(e)

36. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 23 above, the same as if more fully set forth herein, and further avers that the Defendant's actions toward her violated her right to be free of race discrimination in employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., as amended by the 1991 Civil Rights Act.

37. As a proximate cause of the Defendant's afore-described actions in discriminating against Plaintiff, due to her race, Plaintiff was injured and damaged, as more fully set forth in paragraphs 1 through 23 above.  In addition, Plaintiff has suffered considerable mental and emotional anguish.

38. Plaintiff avers that she has pursued and exhausted her administrative remedies.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Handy respectfully prays that this Court grant the following relief:

a) Judgment declaring that the Defendant discriminated against Plaintiff, on the basis of Plaintiff's race;

b) An order granting Plaintiff compensation for rights to which Plaintiff would have been entitled, had Plaintiff not been the victim of race discrimination, effective from the date of final judgment;

c) An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

    d)     An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief; and

    e)     Such further, other and different relief as the Court may deem appropriate and necessary.

**COUNT TWO - UNLAWFUL RETALIATION PURSUANT TO 42 U.S.C. §2000(e)**

39. Plaintiff repeats, realleges and incorporates by reference paragraphs 24 - 35 above, the same as if more fully set forth herein, and further avers that the Defendant violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended by the 1991 Civil Rights Act.

40. As a proximate cause of Defendant's afore-described actions of unlawful retaliation against Plaintiff, the Plaintiff was injured and damaged, as set forth above. In addition, Plaintiff has suffered considerable mental and emotional anguish and incurred attorney's fees.

41. Plaintiff avers that she has pursued and exhausted her administrative remedies.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this Court grant the following relief:

    a)     A judgment declaring that the Defendant has unlawfully retaliated against the Plaintiff after she filed her EEOC charge;

    b)     An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

    c)    An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

    d)    Such further, other and different relief as the Court may deem appropriate and necessary.

**COUNT THREE - RACE-BASED COLD AND HOSTILE WORKING ENVIRONMENT PURSUANT TO 42 U.S.C. §2000(e)**

42.    Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 23 above, the same as if more fully set forth herein, and further avers that the Defendant's actions toward her violated her right to be free of a race-based cold and hostile working environment in employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), et seq., as amended by the 1991 Civil Rights Act.

43.    As specifics for the race-based cold and hostile work environment that Plaintiff suffered, Plaintiff cites the facts set forth particularly in the statement of facts above, paragraphs 1 through 23 above.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this Court grant the following relief:

    a)    A judgment declaring that the Plaintiff was subjected to an egregious race-based hostile work environment;

    b)    An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

    c)    An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

    d)    Such further, other and different relief as the Court may deem appropriate and necessary.

## V.  JURY DEMAND

Plaintiff hereby requests trial by jury on all issues so triable.

Respectfully submitted this 12th day of March 2020

                Vivian Handy, Plaintiff

                /s/ Julian L. McPhillips, Jr.
                Julian McPhillips (ASB-3744-L74J)
                Chase Estes (ASB-1089-F44L)
                Counsel for Plaintiff

**OF COUNSEL:**
**MCPHILLIPS SHINBAUM, L.L.P.**
516 South Perry Street
Montgomery, Alabama 36104
T: (334) 262-1911
F: (334) 263-2321
julianmcphillips@msg-lawfirm.com
cestes@msg-lawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 12th day of March 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Joseph S. Ammons
Donald M. Harrison, III
Alysonne O. Hatfield
Alabama Department of Labor
649 Monroe Street
Montgomery, AL 36131-2220
joseph.ammons@labor.alabama.gov
donald.harrison@labor.alabama.gov
alysonne.hatfield@labor.alabama.gov

                /s/ Julian L. McPhillips, Jr.
                OF COUNSEL